IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID MCCREARY, | : | |
| | : | No. 2:23-cv-04332-MMB |
| Plaintiff, | : | |
| v. | : | |
| | : | Honorable Michael M. Baylson |
| ADULT WORLD, INC., | : | |
| | : | |
| Defendant. | : | |

**BRIEF IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS COMPLAINT**

On November 6, 2023, Plaintiff David McCreary ("Plaintiff") filed this lawsuit alleging gender discrimination by Defendant Adult World, Inc. ("Adult World" or "Defendant") claiming violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"). *See* ECF 1 ("Compl."). Plaintiff's claims must be dismissed pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) for failure to state a claim because Plaintiff has failed to allege <u>any</u> facts that would allow this Court to infer gender discrimination. In addition, Plaintiff has failed to exhaust available administrative remedies under the PHRA. For these reasons as set forth more fully below, Plaintiff's Complaint should be dismissed in its entirety with prejudice.

I.  **PLAINTIFF'S ALLEGATIONS**

Plaintiff is a biological male whom Defendant hired to be a cleaner or clerk on or around January 2023. Compl. ¶¶ 20–21. After he was hired by Defendant, Plaintiff alleges that District Manager Kevin Krupiewski hired two transgender clerks, DeDe Santiago and Courtney Robinson,

at Defendant's Quakertown location. Compl. ¶ 23. Plaintiff alleges he complained of disparate treatment between transgender and non-transgender employees at Defendant. Compl. ¶ 24. On or around April 2023, Plaintiff complained to Krupiewski that both transgender employees, Santiago and Robinson, often arrived late to work and kept the store open past hours. Compl. ¶ 25. Krupiewski allegedly ignored Plaintiff's complaints and stated that he would not issue write-ups to Santiago or Robinson. Compl. ¶ 26. Robinson was promoted to Store Manager within three months of her employment, whereas Plaintiff allegedly received no promotion within three months of his employment. Compl. ¶¶ 27–28.

Plaintiff also alleges, on or around March 2023, a customer made a false complaint about Ms. Stacy Yoder ("Ms. Yoder"), a biological female and Store Manager. Compl. ¶ 29. Plaintiff alleges, without discussing the nature of this false complaint, that Krupiewski "immediately wrote Ms. Yoder up for this complaint" despite the fact that she "provided a statement disproving the complaint." Compl. ¶¶ 29–30. Plaintiff alleges that, on June 4, 2023, Defendant "abruptly terminated Plaintiff's employment" just as Plaintiff was opening the store that morning. Compl. ¶¶ 31–32. Krupiewski allegedly stated to Plaintiff that he was terminated for putting a "drape over the fire exit," even though Krupiewski had never told Plaintiff to remove this drape before this incident Compl. ¶¶ 33, 35. Krupiewski also allegedly terminated Ms. Yoder—the only other non-transgender employee—on the same day. Compl. ¶ 39.

After terminating <u>both Plaintiff and Ms. Yoder</u>, Krupiewski allegedly only retained transgender employees at Defendant's Quakertown location. Compl. ¶ 42. Plaintiff believes that he was discriminated due to his gender in violation of Title VII and the PHRA despite the fact that both he and a biological female were terminated on the same day. *See* Compl. ¶ 45.

## II. PROCEDURAL HISTORY

Plaintiff claims that, after he was terminated on June 4, 2023, he timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), and dual-filed this complaint including his Pennsylvania Human Relations Act ("PHRA") claim with the Pennsylvania Human Relations Commission ("PHRC"), alleging gender discrimination against Defendant.  Compl. ¶¶ 13–14.  On August 7, 2023, Plaintiff states that the EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") to sue Defendant in federal court.  Compl. ¶ 15.

### III. ARGUMENT

#### A. Plaintiff Failed to State a Claim for Which Relief Can Be Granted

##### 1. Standard of Review

A complaint must be dismissed pursuant to Rule 12(b)(6) if it lacks sufficient factual matter—accepted as true and construed in a light most favorable to the plaintiff—to show that the claim is facially plausible.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (applying *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

To make this plausibility determination, the Court must engage in a two-part analysis: first, the Court must first separate the factual and legal elements of a claim.  *Id.* (applying *Iqbal*, 556 U.S. at 678).  While accepting all of the complaint's well-pleaded facts as true, the Court is free to disregard any legal conclusions.  *Id.*  Second, the Court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.  *Id.* at 211. To make a plausible claim, in turn, it is not enough to merely allege the plaintiff's entitlement to relief: the plaintiff must *show* such entitlement with its facts.  *Id.*  Indeed, as the United States Supreme Court has established, "[t]hreadbare recitals of the elements of cause of action, supported by mere conclusory statements, do not suffice."  *See, e.g.*, *Hundley v. Wawa, Inc.*, No. CV 21-

0627, 2021 WL 2555440, at *5 (E.D. Pa. June 22, 2021) (Baylson, J.) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### 2. No Prima Facie Case for Gender Discrimination

There is no reasonable inference to support Plaintiff's allegation of gender discrimination.[1] Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Charlize Cunningham v. Burlington Coat Factory Warehouse Corporation*, 2024 WL 863236 at *3 (D.N.J. Feb. 29, 2024) (quoting 42 U.S.C. § 2000e-2(a)(1); *Jones v. Se Pa. Transp. Auth.*, 796 F.3d 323, 325 (3d Cir. 2015)).[2]

To establish a prima facie claim of employment discrimination, Plaintiff must "show: 1) membership in a protected class; 2) qualification for the position; 3) an adverse employment action taken against him despite being qualified; and (4) 'the action occurred under circumstances that could give rise to an inference of intentional discrimination.'" *Morgan v. Fiorentino*, 811 F. App'x 798, 803 (3d Cir. 2020) (quoting *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008)). "[S]ome causal nexus" must be established between Plaintiff's membership in a protected class and his termination. *Id.* at 803-04 (quoting *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003));

---

[1] The Third Circuit analyzes PHRA discrimination claims under the same standard as Title VII claims, so this brief focuses on Title VII issues. *See Hundley v. Wawa, Inc.*, No. CV 21-0627, 2021 WL 2555440, at *3 (E.D. Pa. June 22, 2021) (Baylson, J.).

[2] The categories under the PHRA include "race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide animal because of the blindness, deafness or physical handicap of any individual . . . ." 43 P.S. § 955(a).

*see, e.g.*, *Walsh v. Irvin Stern's Costumes*, No. CIV.A. 05-2515, 2006 WL 166509, at *4 (E.D. Pa. Jan. 19, 2006) (Baylson, J.).

Though Plaintiff need not establish a prima facie case at the motion to dismiss stage, he cannot merely state that he was discharged due to his protected status. *Johnson v. Montgtomery Cnty. Ct. of Common Pleas*, No. CV 22-170, 2022 WL 2192946, at *4 (E.D. Pa. June 17, 2022) (Baylson, J.) (citing *Santos v. Iron Mountain Film & Sound*, 593 F. App'x. 117, 119 (3d Cir. 2014)). Because the thrust of a Title VII discrimination claim is whether a plaintiff is treated less favorably than others due to his protected quality, he "must plead *facts* that plausibly connect his [protected quality] to his discharge." *See id.* (quoting *Santos*, 593 F. App'x at 119 (emphasis in original)).

Here, Plaintiff fails to satisfy the fourth element: that circumstances surrounding his termination support an inference of gender discrimination or discriminatory animus. For purposes of this Motion, Defendant does not dispute that Plaintiff pled the first three prima facie elements, as Plaintiff alleges that he is a male, that he was qualified for his position, and that he was terminated from his position. Compl. ¶¶ 47–48, 53. However, even accepting all of Plaintiff's allegations as true and construing the Complaint in a light most favorable to Plaintiff, there is nothing here to support Plaintiff's conclusion that circumstances exist giving rise to an inference of discrimination. *See* Compl. ¶ 50.

As this Court has explained, there are two avenues to adequately plead the fourth element of gender discrimination. *Emerson v. Stern & Eisenberg, P.C.*, No. CV 21-3096, 2022 WL 10208548, at *5 (E.D. Pa. Oct. 17, 2022) (Baylson, J.). One avenue is for Plaintiff to allege that similarly situated employees, outside of his protected class, were treated more favorably. *Id.* However, Plaintiff may not selectively choose some comparators while ignoring others. *Id.* (citing

*Simpson v. Kay Jewelers*, 142 F.3d 639, 645 (3d Cir. 1998)).  Alternatively, Plaintiff may adequately allege discriminatory animus by alleging facts showing a causal nexus between the employee's membership in a protected class and the adverse employment action.  *Id.* (citing *Greene v. V.I. Water & Power Auth.*, 557 F. App'x 189, 195 (3d Cir. 2014)).

Here, Plaintiff fails on both fronts.  First, Plaintiff alleges that District Manager Krupiewski, acting on behalf of Defendant, terminated Stacy Yoder, a biological female, on the same day as Plaintiff.  Compl. ¶ 39.  By alleging that "Plaintiff is a member of protected classes [sic] in that he is a male," *see* Compl. ¶¶ 47, 56, while conceding that a biological female was terminated on the same day, Plaintiff fails to show how similarly situated employees outside of his protected status as a male were treated more favorably.  Both groups of employees were treated the same way by being terminated on the same day.

Second, as in *Emerson*, Plaintiff has not shown any causal nexus between his termination and his status as a male employee.  *See Emerson*, 2022 WL 10208548 at *5.  Plaintiff merely states that Krupiewski informed Plaintiff that he was terminated because he placed a drape over the fire exit and stole money from Defendant's store by keeping a tip jar at the counter.  Compl. ¶¶ 33, 36.  Though Plaintiff suggests that he was not warned about hanging a drape or keeping a tip jar on the counter prior to his termination, these facts provide no causal link between his protected status, and his termination.  Because Plaintiff has failed to allege any facts that would allow this Court to infer gender discrimination, this Court should dismiss Plaintiff's claims against Defendant.

### 3. **Plaintiff's Status as a "Non-Transgender Employee" is Not Protected by Title VII or the PHRA**

Plaintiff's status as a "non-transgender employee" is not a category protected by Title VII or the PHRA (*i.e.*, it does not involve race, color, religion, sex, or national origin).[3] It has been recognized within this Circuit – in light of the Supreme Court's decision in *Bostock v. Clayton County*, 590 U.S. 655, 140 S. Ct. 1731 (2020) – that Title VII's protections extend to transgender individuals. *See Charlize*, 2024 WL 8636236 at *4 (D.N.J. Feb. 29, 2024) (citing *Doe v. Triangle Doughnuts, LLC*, 472 F. Supp.3d 115, 129, 135-36 (E.D. Pa. July 16, 2020)). "That's because it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." *Doe*, 472 F. Supp.3d at 129 (quoting *Bostock*, 590 U.S. at 1741-42). It naturally follows that discrimination based on gender stereotyping falls within Title VII's prohibitions. *See id.* at 1741-42 ("[T]ake an employer who fires a transgender person who was identified as a male at birth but who now identifies as a female. If the employer retains an otherwise identical employee who was identified as female at birth, the employer intentionally penalizes a person identified as male at birth for traits or actions that it tolerates in an

---

[3] Complaints about conduct are not protected unless the conduct "fairly falls within the protection of Title VII." *Thacker v. GPS Insight, LLC*, 2019 WL 3816720 at * 3 (D. Ariz. Aug. 14 2019). "[P]ersonal animosity is not the equivalent of sex discrimination," and Plaintiff "cannot turn a personal feud into a sex discrimination case." *Jura v. County of Maui*, No. 11-00338 SOM/RLP, 2012 WL 5187845, at *7 (D. Haw. Oct. 17, 2012) (quoting *Succar v. Dade Cty. Sch. Bd.*, 229 F.3d 1343, 1345 (11th Cir. 2000)); *see also Onscale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (Title VII is not "a general civility code for the American workplace"); *Northington v. H&M Int'l*, 712 F.3d 1062, 1065 (7th Cir. 2013) (no protected activity where plaintiff complained about employee's maltreatment based on that employee's personal dispute with plaintiff over a relationship between plaintiff and the employee's ex); *cf. Maner v. Dignity Health*, 350 F. Supp. 3d 899, 904-06 (D. Ariz. 2018) (discussing cases and holding that defendant's favoritism of his romantic partner was non-cognizable under Title VII because it was not based on sex, but a personal relationship).

employee identified as female at birth. Again, the individual employee's sex plays an unmistakable and impermissible role in the discharge decision.").

In the instant matter, Plaintiff is describing essentially reverse discrimination as a "non-transgender employee." In order to state a prima facie case in the context of "reverse discrimination," a plaintiff "must present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based on a trait that is protected under Title VII" (*i.e.*, involving race, color, religion, sex, or national origin). *Iadimarco v. Runyon*, 190 F.3d 151, 161 (3d Cir. 1999). As noted previously, Plaintiff alleges that District Manager Krupiewski, acting on behalf of Defendant, terminated Stacy Yoder, a biological female, on the same day as Plaintiff. Compl. ¶ 39. Under Title VII or the PHRA, transgender status is not a listed protected category in and of itself as it is in many states. As set forth more fully above, there is no basis for a discrimination claim based upon gender and/or sex. Accordingly, Plaintiff has not stated a cognizable claim for discrimination under Title VII or the PHRA.

### B. Plaintiff Failed to Exhaust Administrative Remedies as Required by the Pennsylvania Human Relations Act

In the event this Court does not dismiss this case in its entirety for failure to state a claim, this Court should dismiss Count II of Plaintiff's Complaint for failure to exhaust an available administrative remedy pursuant to the PHRA. A complaint may be dismissed under Rule 12(b)(6) for failure to exhaust administrative remedies. *Johnson v. City of Philadelphia*, No. CV 16-3651, 2016 WL 7235302, at *2 (E.D. Pa. Dec. 8, 2016) (). In considering a motion to dismiss on these grounds, the court may consider the Equal Employment Opportunity Commission ("EEOC") administrative record without converting the motion to dismiss into one for summary judgment. *Id.* (citing *Robinson v. Dalton*, 107 F.3d 1018, 1022 (3d Cir. 1997)); *Mayer v. Belichick*, 605 F.3d

223, 230 (3d Cir. 2010) (holding that a court may consider "undisputedly authentic documents if the complainant's claims are based on these documents").

The Pennsylvania Human Relations Commission ("PHRC") is granted one year of exclusive jurisdiction to review a claim for discrimination brought under the PHRA. *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 471 (3d Cir. 2001) (citing *Clay v. Advanced Computer Applications, Inc.*, 559 A.2d 917, 920 (Pa. 1989)). This one-year period runs once a plaintiff files a PHRA complaint with the PHRC. During this one-year period, a plaintiff cannot file an action in any court. *Id.* (citing Clay, 559 A.2d at 921) (applying 43 Pa.C.S. § 962(c)(1)).

Here, Plaintiff impermissibly brought this claim in this Court within this one-year period. Plaintiff states that he timely dual filed his complaint alleging gender discrimination with the Equal Employment Opportunity Commission ("EEOC") and PHRC. *See* ECF 1 at 3, ¶¶ 13-14. Plaintiff filed this complaint containing his PHRA claim with the PHRC on July 5, 2023. PHRC Charge ("Exhibit A") at 7.

Thus, this Court should dismiss this claim, as the one-year period of the PHRC's exclusive jurisdiction has not passed, such that Plaintiff has failed to exhaust his administrative remedy.

## IV. CONCLUSION

For the reasons set forth above, Defendant Adult World respectfully requests that this Honorable Court dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI, LLP

By:*/s/ Alexander Nemiroff*

Alexander Nemiroff (PA ID. #92250)
Three Logan Square
1717 Arch Street, Suite 610
Philadelphia, PA 19103
Telephone:   (267) 602-2040
Facsimile:     (215) 253-5017
Attorney for Defendant
Adult World, Inc.

## CERTIFICATE OF SERVICE

I certify that on this 5th day of March 2024, Defendant's Motion to Dismiss, supporting brief, and proposed Order were electronically filed and are available for viewing and downloading from the ECF system. Plaintiff's counsel has consented to service through the ECF system.

Dated: March 5, 2024

*/s/ Alexander Nemiroff*
Alexander Nemiroff (PA ID. #92250)

# EXHIBIT A

EEOC Form 5 (5/01)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | |

**Pennsylvania Human Relations Commission** and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **David McCreary** | **267 638 1799** | **03/04/1990** |

| Street Address | City, State and ZIP Code |
|---|---|
| **23 E 6th Street** | **Lansdale, PA 19446** |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **Adult World** | **15+** | **215 538 1522** |

| Street Address | City, State and ZIP Code |
|---|---|
| **880 South West End Blvd Route 22** | **Quakertown, PA 18951** |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es))*

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER *(Specify below)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest                Latest
                        **June 2023**

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I. In or around January 2023, Respondent hired Charging Party as a Cleaner/Clerk at Respondent's Quakertown location. Charging Party is a biological male.

II. Since the start of Charging Party's employment with Respondent, Kevin Krupiewski, District Manager, has hired two (2) transgender Clerks (DeDe Santiago and Courtney Robinson) at Respondent's Quakertown location.

III. Throughout his employment, Charging Party has complained of disparate treatment between the transgender and non-transgender employees at Respondent. Charging Party complained to Krupeiwski in or around April 2023 that Santiago and Robinson frequently arrived late to work and kept the store open past store hours. Krupeiwski refused to address the complaints, stating that he would not issue Santiago or Robinson write ups. In fact, Krupeiwski promoted Robinson to Store Manager within 90-days of the start of her employment. Charging Party, who had worked at Respondent longer, did not get offered a promotion within 90 days of his employment.

IV. In contrast, in or around March 2023, a customer made a false complaint about Stacy Yoder (biological female), Store Manager. Krupeiwski immediately wrote Yoder up for this complaint, despite the fact that Charging Party, as a witness to the customer interactions, provided a statement disproving the complaint.

V. On or around June 4, 2023, Krupeiwski approached Charging Party as he was opening the store in the morning. Krupeiwski abruptly terminated Charging Party's employment. Krupeiwski stated the reason for termination was that Charging Party put a drape over the fire exit. Importantly, Charging Party had done this so that children could not look into the adult entertainment store's window. Charging Party had not been told to remove the drape prior. Krupeiwski also alleged that Charging Party kept a tip jar on the counter. Krupeiwski accused Charging Party of stealing money from the store. Prior to this day, Charging Party had not been told by anyone at Respondent that there could not be a tip jar on the counter.

VI. That same day, Krupeiwski terminated Yoder's employment as well. Importantly, at that time, Yoder was the only other non-transgender employee that worked at Respondent's Quakertown location. A month prior, Krupeiwski had terminated the only other non-transgender employee, Robert Warthington (biological male). Following Charging Party and Yoder's same-day termination, Krupeiwski only kept transgender employees on the staff at Respondent's Quakertown location.

VII. Following his termination, Charging Party contacted Tamika LNU, Payroll, and Sharon LNU, Human Resources. Tamkia and Sharon stated that they were not aware of Charging Party's termination and Respondent did not have a termination letter prepared for him.

VIII. Respondent discriminated against Charging Party due to his gender in violation of Title VII and the PHRA.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct.<br><br>Jul 5, 2023   *[signature]*<br>David mccreary (Jul 5, 2023 12:56 EDT)<br>*Date*           *Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |