IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAVID MCCREARY,**<br><br>                              Plaintiff,<br><br>v.<br><br>**ADULT WORLD, INC.,**<br><br>                              Defendant. | **CIVIL ACTION**<br><br>**NO. 23-4332** |

**MEMORANDUM RE: MOTION TO DISMISS**

**Baylson, J.**                                                                                                                        **April 4, 2024**

This case involves Plaintiff David McCreary's claims of sex discrimination against Defendant, Adult World, Inc., McCreary's former employer. Plaintiff, a cisgender male, asserts that Defendant impermissibly favored Plaintiff's similarly situated transgender coworkers, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"). Presently before this Court is Defendant's motion to dismiss Plaintiff's Complaint. For the reasons explained below, Defendant's motion is **GRANTED IN PART**, **DENIED IN PART**, and with **LEAVE TO AMEND**.

**I.      FACTUAL BACKGROUND**

As alleged in Plaintiff's Complaint, ECF 1, the relevant facts are as follows. Plaintiff is a biological male. ECF 1 at ¶ 20. Plaintiff is cisgender, meaning that his gender identity corresponds to his sex as identified at birth. ECF 6-1 at 2. Defendant hired Plaintiff as a "Cleaner/Clerk" in or around January 2023. Id. at ¶ 21. Plaintiff alleges he was "qualified for his position and performed well." Id. at ¶ 22. After Plaintiff began working for Defendant, Kevin Krupiewski, Defendant's

1

District Manager, hired two transgender clerks (D.S. and C.R.) at Defendant's Quakertown location. Id. at ¶ 23.

Throughout Plaintiff's employment, Plaintiff allegedly complained to Defendant of disparate treatment between the transgender and cisgender employees. Id. at ¶ 24. For example, Plaintiff alleges that he complained to Krupiewski that D.S. and C.R. frequently arrived late and kept the store open past operating hours. Id. at ¶ 25. According to Plaintiff, however, Krupiewski refused to address Plaintiff's complaints and told Plaintiff he would not discipline or otherwise issue write-ups to D.S. and C.R. Id. at ¶ 26.

These alleged complaints notwithstanding, Krupiewski promoted C.R. to store manager within 90-days of C.R.'s arrival. Id. at ¶ 27. Plaintiff, who had worked for Defendant longer than C.R., was not offered a promotion within 90-days of his arrival. Id. at ¶ 28.

In or around March 2023, a customer made an allegedly false complaint about Stacy Yoder, a store manager at the Quakertown location. Id. at ¶ 29. Yoder was a cisgender female. Id. Krupiewski immediately disciplined Yoder based on this complaint, despite Plaintiff allegedly having witnessed the customer interaction and providing Defendant with a statement disproving the customer complaint. Id. at ¶ 30.

On or about June 4, 2023, Krupiewski approached Plaintiff as Plaintiff was opening the store, at which point he abruptly terminated Plaintiff. Id. at ¶¶ 31-32. Krupiewski stated Defendant was terminating Plaintiff because Plaintiff had improperly placed a drape over a fire exit. Id. at ¶ 33. According to Plaintiff, he had only placed a drape over the fire exit because there was a window into Defendant's store, and Plaintiff wanted to avoid children looking into the window. Id. at ¶ 34. Likewise, Plaintiff contends that Defendant had never before told Plaintiff that it was impermissible to hang a drape over this fire exit. Id. at ¶ 35.

Krupiewski allegedly further accused Plaintiff of keeping a tip jar on the counter and stealing money from the store. Id. at ¶¶ 36-37. Plaintiff denies the theft allegation, and again, contends that Defendant had never told Plaintiff that tip jars were not permitted. Id. at ¶ 38.

Defendant also terminated Yoder that same day. Id. at ¶ 39. According to Plaintiff, Yoder and Plaintiff were the only cisgender employees working at Defendant's Quakertown location at the time. Id. at ¶ 40. Further, one month prior, Krupiewski had terminated the only other cisgender employee, a biological and cisgender male. Id. at ¶ 41. Thus, after Defendant had terminated Plaintiff and Yoder, only transgender employees worked at the Quakertown location. Id. at ¶ 42.

Following his termination, Plaintiff reached out to Defendant's payroll and human resources representatives about his termination. Id. at ¶¶ 42-43. Both representatives indicated they were not aware that Plaintiff had been terminated, and thus did not have a termination letter prepared for him. Id. at ¶ 44.

## II.      PROCEDURAL HISTORY

Prior to initiating this suit, Plaintiff timely dual-filed (1) a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and (2) a claim under the PHRA with the Pennsylvania Human Relations Commission ("PHRC"), alleging sex discrimination against Defendant. Id. at ¶¶ 13-14. Plaintiff filed these claims on or around July 5, 2023. ECF 6-1 at 1; ECF 7 at 4.

On August 7, 2023, the EEOC dismissed Plaintiff's Charge of Discrimination and issued a Notice of Rights to Sue. ECF 1 at ¶ 15.

On November 6, 2023, Plaintiff filed his Complaint in this Court, asserting two counts of gender discrimination, under (1) Title VII and (2) the PHRA. ECF 1.

Defendant filed the instant Motion to Dismiss on March 4, 2024. ECF 4. Plaintiff responded on March 18, 2024. ECF 6. Defendant replied on March 25, 2024. ECF 7.

### III.   LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must include sufficient facts in the complaint that, accepted as true, "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint is insufficient if it suggests only the "mere possibility of misconduct" or is a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements," and thus will not suffice if it is "devoid of further factual enhancement," Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (citing Twombly, 550 U.S. at 555). Accordingly, in considering a motion to dismiss, the Court accepts all factual allegations as true and views them in a light most favorable to the plaintiff, Doe v. Univ. of the Scis., 961 F.3d 203, 208 (3d Cir. 2020), but may not "assume that [the plaintiff] can prove facts that [she] has not alleged[,]" Twombly, 550 U.S. at 563 n.8 (citing Associated Gen. Contractors of Cal. Inc. v. Carpenters, 459 U.S. 519, 526 (1983)).

### IV.   PARTY CONTENTIONS

#### A. Defendant's Motion

Defendant raises two arguments in support of its motion to dismiss. First, Defendant asserts that Plaintiff has failed to plausibly plead "circumstances surrounding his termination" that "support an inference of gender discrimination or discriminatory animus." ECF 4-1 at 5. More precisely, Defendant argues Plaintiff cannot show that (1) similarly situated employees, outside of his protected class, were treated more favorably, or (2) a causal nexus between Plaintiff's membership in a protected class and Defendant's adverse employment action. Id. at 5-6.

On similarly situated employees, Defendant contends that by "conceding that a biological female was terminated on the same day, Plaintiff fails to show how similarly situated employees outside of his protected status as a male were treated more favorably." Id. at 6. Otherwise stated, Defendant argues that "Plaintiff's status as a 'non-transgender employee' is not a category protected by Title VII or the PHRA." Id. at 7.

On a lack of causal nexus, Defendant asserts that "Plaintiff merely states that Krupiewski informed Plaintiff that he was terminated because he placed a drape over the fire exit and stole money from Defendant's store by keeping a tip jar at the counter," which is wholly unrelated to Plaintiff's sex. Id. at 6.

Second, Defendant asserts that—even if this Court does not dismiss Plaintiff's Title VII claim—it must nonetheless dismiss Plaintiff's PRHA claim for a failure to exhaust all applicable administrative remedies. Id. at 8. Specifically, Defendant argues that the PHRC is granted one year of exclusive jurisdiction to review PHRA claims, and Plaintiff has "impermissibly brought this claim in this Court within this one-year period." Id. at 9.

**B.  Plaintiff's Response**

Plaintiff counters that, in Bostock v. Clayton County, the Supreme Court made clear that "[f]or an employer to discriminate against employees for being . . . transgender, the employer must intentionally discriminate against individual men and women in part because of sex." ECF 6-1 at 5-6 (citing to Bostock v. Clayton Cnty., 140 S. Ct. 1731, 1743 (2020)). As the Court unequivocally explained, "[b]y discriminating against transgender persons, the employer unavoidably discriminates against persons with one sex identified at birth and another today." Bostock, 140 S. Ct. at 1476. Accordingly, Plaintiff argues "[t]he same must therefore apply in the converse: by discriminating against a cisgender person, the employer is discriminating against a person because

they continue to identify as the same sex identified as birth." ECF 6-1 at 6. Otherwise stated, Plaintiff contends that "[i]f discrimination based on transgender status necessarily entails discrimination based on sex, then so too must discrimination based on cisgender status." Id.

Against that backdrop, Plaintiff further contends that he has adequately pled an inference of discrimination, as he has alleged that "Krupiewski and Defendant terminated all cisgender men and the one cisgender woman working at the Quakertown location within a two-month period while treating the two transgender employee comparators more favorably." Id. at 7.

As for the PHRA claim, Plaintiff concedes he has not exhausted all available administrative remedies. Id. at 8. Nonetheless, Plaintiff asserts that such a failure is "not fatal," and proposes that this Court "hold[] the motion to dismiss the PHRA claim for failure to exhaust administrative remedies in abeyance until July 5, 2024 as dismissing and requiring amendment at this juncture would be a waste of judicial resources." Id. Plaintiff further argues that "other Courts in this district have considered an EEOC right to sue sufficient to defeat a motion to dismiss for failing to exhaust administrative remedies under the PHRA," and thus, here too, "it would be unnecessary to grant a motion to dismiss on this ground." Id. at 8 (citing to Simon v. IPS – Integrated Project Servs., LLC, 2018 U.S. Dist. LEXIS 125012 **6-9 (E.D. Pa. July 25, 2018) (Jones II, J.)). At a minimum, Plaintiff asks this Court to dismiss without prejudice so that Plaintiff can later amend his Complaint and cure this conceded deficiency. Id.

**C. Defendant's Reply**

Defendant replies, asserting that Plaintiff reads Bostock too broadly. While Defendant concedes that Bostock brings transgender discrimination within Title VII's sweep, Defendant nonetheless asserts "the reverse is not necessarily true," as "[a] plain reading of Title VII and analogous cases does not support reverse discrimination claims for 'cisgender' employees." ECF

7 at 1-2.  In support of this argument, Defendant notes that certain courts have (1) "permitted racial discrimination to be inferred from national origin discrimination, but not vice versa," and (2) "pointed out distinctions between sexual harassment and gender discrimination."  Id. at 3.

Further, Defendant asks this Court to ignore Plaintiff's request to excuse its PHRA exhaustion failures.  While Defendant acknowledges that good faith efforts may excuse exhaustion errors in some instances, Defendant asserts that Plaintiff "has failed to show any good faith that would warrant excusing his failure to exhaust his PHRA claim."  Id. at 2.

V.     DISCUSSION

### A. Plaintiff Plausibly Alleges a Title VII Violation

Title VII establishes that it is unlawful for an employer to discriminate against an employee "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(2).  As noted, in Bostock, the Supreme Court made clear the statute applies to "[a]n employer who fires an individual merely for being gay or transgender."  Bostock, 140 S. Ct. at 1754.

To survive a motion to dismiss on a Title VII claim, "a plaintiff must plead facts sufficient to raise a reasonable expectation that discovery will reveal the plaintiff (1) is a member of a protected class, (2) was qualified for the position which she held, (3) suffered an adverse employment action which was (4) taken under circumstances giving rise to an inference of discrimination."  Emerson v. Stern & Eisenberg, P.C., 2022 WL 10208548, at *3 (E.D. Pa. Oct. 17, 2022) (Baylson, J.) (citing to Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410–11 (3d Cir. 1999)).

Here, "[f]or purposes of this Motion, Defendant does not dispute that Plaintiff pled the first three prima facie elements, as Plaintiff alleges that he is a male, that he was qualified for his position, and that he was terminated from his position."  ECF 4-1 at 4.  Thus, Defendant's motion

turns on whether Plaintiff's Complaint plausibly demonstrates "circumstances that raise an inference of discriminatory action." Sarullo v. U.S. Postal Service, 352 F.3d 789, 797 (3d Cir. 2003).

As this Court recently explained, "[a] plaintiff may satisfy [this] fourth element of a prima facie case for Title VII discrimination by alleging facts that similarly situated employees, outside of the protected class, were treated more favorably." Emerson, 2022 WL 10208548, at * 5 (citing to Mandel v. M&Q Packaging Corp., 706 F.3d 157, 170 (3d Cir. 2013)).  That said, "a plaintiff may not, without appropriate allegations, selectively choose some comparators while ignoring others." Id. (citing to Simpson v. Kay Jewelers, 142 F.3d 639, 645 (3d Cir. 1998)).  Alternatively, "a plaintiff can adequately allege discriminatory animus by alleging facts that 'otherwise show[ ] a causal nexus between [the employee's] membership in a protected class and the adverse employment action.'"  Id. (citing to Greene v. V.I. Water & Power Auth., 557 F. App'x 189, 195 (3d Cir. 2014) (non-precedential)); see also Sarullo, 352 F.3d at 797 n.7.  Yet, "stray remarks and unconnected, coincidental circumstances do not satisfy this element of the prima facie case." Emerson, 2022 WL 10208548, at * 5.

### i. Yoder's Simultaneous Firing Does Not Undermine Plaintiff's Claim

Defendant's primary contention here is that by "conceding that a biological female was terminated on the same day, Plaintiff fails to show how similarly situated employees outside of his protected status as a male were treated more favorably." ECF 4-1 at 6.  As Defendant puts it, "[b]oth groups of employees were treated the same way by being terminated on the same day." Id.

Yet, Bostock itself makes clear that reasoning is untenable.  Indeed, by Defendant's own logic, an employer who discriminates against a transgender person assigned female sex at birth

8

could avoid Title VII liability by also terminating a transgender person assigned male sex at birth. Bostock expressly dispels this notion, explaining, in relevant part, that

> An employer musters no better a defense by responding that it is equally happy to fire male *and* female employees who are homosexual or transgender. Title VII liability is not limited to employers who, through the sum of all of their employment actions, treat the class of men differently than the class of women. Instead, the law makes each instance of discriminating against an individual employee because of that individual's sex an independent violation of Title VII. So just as an employer who fires both Hannah and Bob for failing to fulfill traditional sex stereotypes doubles rather than eliminates Title VII liability, an employer who fires both Hannah and Bob for being gay or transgender does the same.

Bostock, 140 S. Ct. at 1742 (emphasis added).[1] So while Defendant may be correct that "non-transgender employee" is not expressly mentioned in text of Title VII, ECF 4-1 at 7, that does not preclude the possibility that discrimination against both a cisgender male and cisgender female may be independent Title VII violations. Indeed, even if Bostock did not address the exact scenario before this Court, its logic applies in equally force. Defendant cannot and has not explained why the following would be an incorrect reading of Bostock: "[f]or an employer to discriminate against employees for being [**cisgender**], the employer must intentionally discriminate against individual men and women in part because of sex." Bostock, 140 S. Ct. at 1743 (emphasis and bold added); see also Dijon v. Cent. Ohio Transit Auth., 630 F. Supp. 3d 908, 917 (S.D. Ohio 2022), aff'd, 2023 WL 4080153 (6th Cir. June 20, 2023) (identifying a cisgender employee as a "similarly situated comparator" for a transgender plaintiff); cf Yoder v. Prince, 2023 WL 3948253, at *2 (S.D. Ill. June 12, 2023) ("Although [plaintiff] takes issue with the policy to only offer 'body puffs' to transgender inmates, rather than general population inmates, there are

---

[1] Likewise, the Court expressly considered the scenario in which "an employer who fires a transgender person who was identified as a male at birth but who now identifies as a female, concluding that "if the employer retains an otherwise identical employee who was identified as female at birth, the employer intentionally penalizes a person identified as male at birth for traits or actions that it tolerates in an employee identified as female at birth." Id. at 1741-42.

9

simply no allegations to suggest that this decision was made <u>for the purpose of discriminating against cisgender inmates</u>") (emphasis added).

Rephrased, firing someone for being a cisgender male—that is, someone assigned as male at birth and who continues to identify as male—necessarily involves firing them, "in part because of sex." <u>Bostock</u>, 140 S. Ct. at 1741.  Likewise, firing someone for being a cisgender female—that is, someone assigned to be female at birth and who continues to identify as female—also necessarily involves firing them, "in part because of sex." <u>Id</u>.  Accordingly, Defendant's argument that Defendant's decision to simultaneously fire Yoder, which Plaintiff alleges to also be based on sex, cannot unilaterally undermine Plaintiff's Title VII claim.[2]

> ii. <u>The Complaint Raises an Inference of Discriminatory Animus</u>

The closer question here is whether the Complaint has actually plausibly raised an inference of discriminatory animus. Ultimately, the Court concludes that it does.  As noted, Plaintiff may prevail by showing that (1) similarly situated employees, outside of the protected class, were treated more favorably, or (2) a causal nexus between his termination and his sex. <u>Emerson</u>, 2022 WL 10208548, at *5.

Plaintiff's Complaint satisfies at least this first prong.  Most notably, Plaintiff alleges that he complained to Defendant that Plaintiff's transgender co-workers "frequently arrived late to work and kept the store open past the operating hours," and yet that Defendant never disciplined them.  To the contrary, one co-worker was promoted on a faster timeline than Plaintiff.  By contrast, Plaintiff was allegedly terminated—without warning—for a first-time infraction.

---

[2] Nor is the Court persuaded by Defendant's invocation of case law indicating that (1) racial discrimination may be inferred from national origin discrimination, or (2) sexual harassment and gender discrimination are distinct concepts.  ECF 7 at 3.  These are examples of distinct, differentiated classes or concepts.  They simply have no bearing on whether <u>Bostock</u>'s protections for transgender individuals inversely applies to cisgender individuals.

Likewise, Defendant immediately disciplined Yoder, despite a fellow employee (Plaintiff) casting doubt on the validity of the underlying customer complaint.

In the Court's view, these dissimilarities—with respect to both discipline and advancement opportunities—raises the requisite "inference of discriminatory animus," at least for purposes of a motion to dismiss. Terrell v. Main Line Health, Inc., 320 F. Supp. 3d 644, 656 (E.D. Pa. 2018). Plaintiff has alleged that, as a cisgender male, he was treated less favorably than his similarly situated transgender coworkers. That Plaintiff's cisgender female coworker also may have been treated less favorably does not alter that allegation. If anything, it bolsters it, particularly when the Court considers Plaintiff's further allegation that, following these firings, Defendant employed only transgender employees.

Otherwise stated, allegations that an employer impermissibly favors transgender employees over both similarly situated cisgender males and similarly situated cisgender females satisfies the "inference of discrimination" requirement. And while Defendant is correct that Plaintiff may not "selectively choose some comparators," Emerson, 2022 WL 10208548, at *5, Plaintiff's allegations here present no such selectivity. He alleges bias against himself as a cisgender male, and potentially against Yoder as a cisgender female.[3] He does not, by contrast, selectively omit the existence of other cisgender male or cisgender female employees who were treated similarly to Defendant's transgender employees. Nor does Defendant assert Plaintiff has selectively omitted instances of Defendant terminating or disciplining similarly situated transgender employees in a manner that mirrored Plaintiff's termination. As the Third Circuit has made clear, the inquiry is whether Plaintiff has alleged "evidence of comparators (i.e., similarly

---

[3] The Court notes that, in resolving this motion, it need not address whether cisgender male and cisgender females, rather than all those people who identify as cisgender, represent two distinct protected classes.

situated employees who (a) were <u>not members of the same protected class</u> and (b) were treated more favorably under similar circumstances)." <u>Greene</u>, 557 F. App'x at 195 (emphasis added). And here, again, Defendants do not even attempt to assert that Plaintiff falls within the same protected class as his transgender coworkers.[4]

To be sure, discovery may reveal that Plaintiff's allegations are unfounded, or that Defendant terminated Plaintiff for a reason wholly unrelated to sex. Yet, at the pleading stage, this Court simply cannot say that Plaintiff has failed to plausibly allege discrimination, at least in part, based on sex. Accordingly, Defendant's motion to dismiss Plaintiff's Title VII claim is **DENIED**.

### B. Plaintiff Has Not Properly Exhausted PHRA Administrative Remedies

The Court reaches the opposite conclusion for Plaintiff's PHRA claim. Before filing a PHRA suit, a plaintiff must file a complaint with the PHRC and exhaust the remedies provided for by the PHRA. <u>Burgh v. Borough Council of Borough of Montrose</u>, 251 F.3d 465, 471 (3d Cir. 2001); <u>Clay v. Advanced Computer Applications, Inc.</u>, 559 A.2d 917, 919-20 (Pa. 1989); <u>Schweitzer v. Rockwell Int'l</u>, 586 A.2d 383, 387 (Pa. Super. 1990) ("[I]nvocation of the procedures set forth in the [PHRA] entails more than the filing of a complaint; it includes the good

---

[4] Indeed, in other contexts, it would be absurd to credit the distinctions Defendant attempt to parse here. For instance, an employer would not argue that it cannot be held liable under Title VII for treating White employees more favorably than, for instance, <u>both</u> Black and Hispanic employees. See., e.g., <u>Am. Future Sys., Inc. v. Pennsylvania State Univ.</u>, 752 F.2d 854, 857 n.9 (3d Cir. 1984) ("AFS has been found to follow a racially discriminatory credit policy, under which white students receive better terms than blacks or hispanics.") (citing to <u>United States v. American Future Systems, Inc.</u>, 571 F.Supp. 551 (1983), <u>aff'd</u>, 743 F.2d 169 (3d Cir.1984)); see also <u>Iadimarco v. Runyon</u>, 190 F.3d 151 (3d Cir. 1999) ("the dictates of Title VII 'are not limited to discrimination against members of any particular race [and Title VII] proscribe[s] racial discrimination in private employment against [W]hites on the same terms as racial discrimination against nonwhites.") (citations omitted).

faith use of the procedures provided for disposition of the complaint."). Once the complaint is filed, the PHRC has one year of "exclusive jurisdiction" within which to attempt conciliation. Burgh, 251 F.3d at 471; see also 43 Pa.C.S. § 962(c)(1)

Defendant argues, and Plaintiff does not contest, that if a plaintiff brings suit for an alleged PHRA violation during the PHRC's one year conciliation period, then Plaintiff has not exhausted his remedies as required by the PHRA. ECF 4-1 at 8-9. Defendant is correct. In such a scenario, a plaintiff is barred from asserting a PHRA claim. See Kozlowski v. Extendicare Health Serv., Inc., 2000 WL 193502, at *4 (E.D. Pa. Feb. 17, 2000); Walker v. IMS America, Ltd., 1994 WL 719611, at *5 (E.D. Pa. Dec. 22, 1994); Lyons v. Springhouse Corp., 1993 WL 69515, at *3 (E.D. Pa. Mar. 10, 1993) (same); see also Schweitzer, 586 A.2d at 387 (same); but see Violanti v. Emery Worldwide A-CF Co., 847 F. Supp. 1251, 1258 (M.D. Pa. 1994).

Plaintiff filed his Complaint in this case approximately four months after dual filing his administrative complaint with the EEOC and PHRC. ECF 6-1 at 8; ECF 1. In so doing, Plaintiff has "refused to give the PHRC the opportunity to resolve [his] complaint through conciliation and failed even to make a good faith attempt to exhaust her remedies as required by the PHRA." Kozlowski, 2000 WL 193502, at *4. Thus, Plaintiff's PHRA claim is not properly before this Court.

Accordingly, the Court will **GRANT** Defendant's motion to dismiss Plaintiff's PHRA claim, **WITHOUT PREJUDICE**, as the Court approves Plaintiff's right to amend his Complaint following the completion of the administrative process, if that claim has not been administratively resolved.[5]

---

[5] In so granting, the Court notes that Plaintiff is misguided in invoking Simon v. IPS-Integrated Project Servs, 2018 WL 3585137 (E.D. Pa. July 26, 2018). As Defendant astutely observes, Simon is distinguishable because the plaintiff in that case amended his complaint after the one-year mark, rendering the exhaustion issue moot. Id. at *4. Indeed, while "courts in the Third Circuit have

## VI.     CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED IN PART, DENIED IN PART,** and with **LEAVE TO AMEND.** An appropriate Order follows.

O:\CIVIL 23\23-4332 Mccreary v. Adult World, Inc\23cv4332 - Memo re MtD.docx

---

adopted a more flexible approach to PHRA exhaustion," apart from Simon, that flexibility essentially only extends to instances where [1] "the period of exhaustion expires during the pendency of litigation," or [2] "plaintiff files an amended complaint after the period of exhaustion." Eldridge v. Municipality of Norristown, 828 F. Supp. 2d 746, 758 (E.D. Pa. 2011), aff'd, 514 F. App'x 187 (3d Cir. 2013); Rosetsky v. Nat'l Bd. off Med. Examiners of U.S., Inc., 350 Fed.Appx. 698, 703 & n. 3 (3d Cir.2009); Schaefer v. Independence Blue Cross, Inc., 2005 WL 181896, at *5-6 (E.D. Pa. Jan. 26, 2005); Violanti, 847 F.Supp. at 1258; Wardlaw v. City of Phila., 2011 WL 1044936, at *3 & n. 45 (E.D. Pa. Mar. 21, 2011); Rizzotto v. Quad Learning, Inc., 2019 WL 2766588, at *4 (E.D. Pa. June 28, 2019). Here, neither has occurred.